Good morning, your honors. Brian Spears of Spears Manning & Martini for the appellant O'Neill McKenzie. May it please the court, counsel for the government. I'd like to begin by making two points. First, in this appeal, the government has trivialized the sanctity of private storage lockers. It's untenable for the government to liken a storage locker to a piece of luggage at an airport or to the trunk of a car. Private storage lockers often contain some of our most cherished personal items, often the very contents of our homes, which we all know is regarded as a place that enjoys heightened privacy protections. Courts indeed have recognized that storage lockers command a high degree of privacy. The Supreme Court of the United States has stated that in the Caro decision. This court has noted that in the United States v. Hamilton and the Tenth Circuit used the phrase commanding a high degree of privacy. But we're not talking about an entry into the storage locker without warrant. We're talking about a dog sniff outside the storage locker, correct? That's correct, your honor, which likens the case more to the case from this circuit, United States v. Thomas, which involved a dog sniff on the outside of an apartment. No one lived, though, in the storage unit. I mean, this was an area that was open to the public. That was a commercial space. There was an agreement, a lease agreement that gave the owners of the property the right to enter for various purposes. And I'm having difficulty seeing how when in an area where people walked through regularly and no one lived, you could really draw that kind of analogy to Thomas into an apartment building where people live in and conduct their most private affairs. Respectfully, your honor, the nature of this particular private storage facility is different from some of the other cases that the government has cited that involve, for example, commercial warehouses. This private security facility was generally open to the public, which is what the district court held incorrectly. And it was secured. It was also an enclosed facility. How many units were there in the facility? There were multiple units, your honor. At least 296? Yeah, at least 296. Correct, your honor. But again, your honors, you have to, I think, size up the nature of the use of private storage lockers in general. Is your argument that there's some sort of, I mean, where property has come roaring back to life and deciding whether something is a search? And in Jardines, walking a dog up to the front door of the house, you're intruding on property to gather information. So it becomes a search without regard to expectations of privacy. That's an entirely different test. Is there an argument that there is a property interest in the exterior of a rental unit in a facility with hundreds of rental units? And what would the nature of that property interest be? Or are you relying just on reasonable expectation of privacy? Your honor, we are proceeding under both tests in Jardines. Of course, the Supreme Court set forth the property rights baseline test, which we are relying on. And our theory under that. Mr. Spears, let me ask you a question. The property rights baseline test with regard to residences talks about the curtilage. And I mean, generally, you don't get into someone's front door until you cross their property line. And so they own, their ownership goes beyond the front door. A person who rents a storage unit, how far out from the sliding door of the storage unit or the garage door of the storage unit, is that property right to extend, in your view? It doesn't extend at all, does it, from the lease, does it? No, that's correct, your honor. We're not arguing that this is a business curtilage situation. I mean, I'll reveal something to you. I have a storage unit. I'm probably the only member of the Second Circuit who does have a storage unit because I live in upstate New York. But so I have neighbors on either side of me. And when they use their storage units, they generally, I've seen them park in front of my space. Are they invading my curtilage? I don't think so. Are they? They're not. And we're not proceeding under the basis that this is business curtilage. But I think the key point we're trying to make here is. But if someone were to walk down, the units face each other, and someone who has permission to be there is walking down and suddenly smells something from my unit. Hopefully they don't, but they smelled something from my unit. Have they searched my unit? I mean, it's there to be smelled. But the issue here is what's inside the unit. And our point is that for the government to liken this. The issue is the issue is where if you want to do a property rights baseline, you've got to tell us where the property right extends. Right. And tell me that yet. OK, I would like to tell you that, Your Honor. OK, good. There is that our theory under the property rights baseline test is that there was an intrusion through the gate. We don't have anything in this record. One of the big issues here is the absence of a suppression hearing. But we don't have anything in this record that justifies how. And that gate and it does appear from the record, even from the affidavits of the law enforcement officers, that they were, in essence, conducting a general search with with a canine by sniffing multiple units and then arriving at an alert at two ninety six. That's that's what this limited record. So if the record if the record did show that they had the consent of the employees who ran the storage facility to enter with their dog, does that eliminate your claim on? Yeah, it changes the analysis under the property rights baseline test, because at that point we wouldn't have an intrusion. And again, this was something that needed to be developed. There was suppression hearing, but it still leaves open the question of whether there was an expectation of privacy with respect to the contents of the unit. But still not with respect to the contents, because really what we're focusing on is the dog walking in front and alerting at the unit and whether that was a search. And therefore, whether probable cause supported the warrant and entry. That's my understanding. My focus has been was there an invasion of some reasonable expectation of privacy or property right when the police walked past with the dog and the dog alerted? Yes, your honor. And again, United States versus Thomas is helpful to this this discussion because they're the law enforcement officers. But again, that's a dwelling and this is not a dwelling. Your honor. Right. So so somewhere in the spectrum, we have to decide is this is a property storage unit more like the luggage that you would bring to the airport or the trunk of a car? Or is it more like the rights that someone would have in the dwelling? Our position is that on that spectrum, we are closer to the dwelling unit because of the personal nature of items that people store in their in their storage lockers. Can I just ask one question about the prop going back to the property analysis one more time? You said if the if the employee at the storage unit had let the officers in, that would shift your focus from property, defeat property and and take you to reasonable expectation of privacy. But doesn't that doesn't that concession mean there is no property interest? Because if you have a prop, you know, if the the owner of the storage facility, the overall storage facility is the one that that grants or withholds access, doesn't that mean it's his or her property interest and not any interest of the individual unit holder? This access to the common areas? Yeah, we would submit that it's a it's a limited property interest in the way that a resident in a large apartment building would have a limited property interest in the space outside of their apartment. Again, bringing United States versus Thomas into the discussion. So so that's that's why we believe Thomas is controlling. We have to sort of judge under the circumstances here where along that continuum and property storage locker falls. Our position is it's closer to Thomas and therefore Thomas controls. I've reserved two minutes for rebuttal, your honors. I'll save for that. Thank you. Thank you. We'll hear from the government. Thank you, your honors. I'd like to pick up where my colleague left off. I think the courts be very wary of expanding the the property rights baseline of protection of the Fourth Amendment beyond the enumerated areas that the Constitution lists, which is a house papers and effects and persons. The storage unit is not a house. There's no claim that Mr. McKenzie was living here. And I think once you get rid of the cartilage issue, then I think that entire claim goes away. Moreover, in the United States versus Dunn, the Supreme Court case, the Supreme Court refused to extend the property rights concept even to a barn that was located on the defendant's property and which police had to scale two fences to get to. So I think that the Supreme Court has signaled very clearly that the property rights baseline is limited to the specific areas enumerated. Go ahead. Go ahead, Judge Carney. I'll chime in later. So would you say it makes no difference to our analysis as to whether a search was conducted, whether the officers were trespassing or not? Yes, your honor. I don't think it does make a difference. This even under either theory, under the baseline of property rights or under the privacy theory. Why didn't he have a reasonable expectation of privacy insofar as he wouldn't expect police to violate law and property rights of the facility, which he was paying to protect his things, for them to kind of barge in and bring in a canine or other imaging device or what have you with absent a warrant? Your honor, I think this court has made very clear, even in the heightened context of an apartment building, a multifamily apartment building, this court has said repeatedly that even when the police, or where there's no evidence of the police trespassed, or even when there's a claim that they got in without permission to the common areas of an apartment building, the expectation of privacy, the defendant does not have an expectation of privacy in the common areas. And this is United States v. Fields is one of the cases. That's 113 F 313. It is what the court said is it's not the trespass that makes police observations unlawful. Instead, it is only where the police enter an area where those observed cannot reasonably anticipate observation from vantage points obtained by trespassing. Now, here, given the context and given the evidence in the affidavit, anyone who rented a storage unit was allowed entry into any area of this facility. So you had one of Mr. McKenzie's associates using a different password and entering through the gates and then going to a different storage unit. You had also the lease agreement, which I think can come in under the plain error view because one of his claims is that the court should have held a Frank's hearing based on the omission of an explanation of how the police got in and that was never raised below. So I think you can look to the entire record and the lease agreement makes very clear that The ownership of maybes can allow police even entry into your particular unit and also the ownership of may be storage facility could move your can enter you move physically move all your belongings to a different unit. They've also banned the use of contraband and I would like to get to Thomas, which I think is a is denominated a privacy case. And that's the way it's explained in the decision. This court in Hayes has limited Thomas to the to its context in Hayes a defendant tried to use Thomas to say that the police were violating his right to privacy by searching a bag that was 60 feet away from his house and the court rejected that saying no Thomas Is is literally just about the invasion of the sanctity of a home through the dog sniff against that back. You have to look at Thomas also against the background of Supreme Court decisions that have said that dog sniff is is sui generis. It doesn't reveal anything except the presence or absence of contraband. It doesn't show anything about Go ahead, but they but the court did say in Jardines that there was a the use of a dog. When you make a property intrusion and and into Justice Kagan's opinion. And I think a majority of the court would agree that a reasonable expectation of privacy interest is also invaded when you bring a dog up to the door of a residence. So you have to rely on your in the reason why patient privacy argument. You just have to say a storage unit is not the same as the door of a residence. Do you do you think that Jardines undercuts our decision and Thomas at all or or can we place Thomas into Jardines saying, well, there's a reasonable expectation of privacy in the in a doorway to an apartment building in an analogous way to a doorway to a home suburban home. I think I don't think Jardines undercuts Thomas it. I think it can the majority opinion confined itself to the property view and Justice Kagan in her concurrence said you don't need to revive the property theory, you can look to the specific or the unique character of a private dwelling As the basis and this is at 1418 a home is the most private in violet or so we expect of all places and things. The Fourth Amendment protects I think what Kate judge the what the other judges were doing. We're saying we're not going down the cat's privacy road. We're confining ourselves. We don't have to go there. We're confining ourselves to the property concept. Can I just ask a follow up returning to the property analysis for a moment. You say at one point in your brief that there is no curtilage for office property and that wasn't my understanding. I mean, John, you rely on this morning. That's a case about whether the barn is in an open field or whether it's in a home's curtilage. It's about a ranch. So a residence. But when I thought Dow Chemical sort of carefully didn't say, you know, it said aerial photography into a big sprawling industrial space, the exterior of a big sprawling industrial space. Does not is not implicating the curtilage, but I thought I didn't read it to say there is no possibility of curtilage around office property. Am I wrong about that. I don't know. You're on. You're not. I think that that I think the question is hasn't been squarely decided by the by the circuit, whether there is commercial curtilage. I think there's some support for it. If you read into certain decisions, but I don't think it's firmly established that there's such a thing as commercial curtilage. And here, as we point out in our brief, that would apply to the owners of the storage unit. I don't think given the nature of the rental agreement here that there's any support for the claim that Mr. McKenzie has any property rights in the area outside immediately outside of his storage unit. Let me ask you, we've been talking as if storage units are all interchangeable, but I can imagine the storage unit being developed in a circumstance where the security is very, very high, where other kinds of promises of privacy are made in the lease agreement. Where, you know, absence of fire or explosion, the owner promises not to access the property and where the architecture has architect has designed it so that there's no passage by the other users in front of the entrance. Would you agree that in circumstances like that, that there might be increased reasonable expectation of privacy that would make a dog sniff like this intrusive and violative of those expectations? Your Honor, I don't believe so because of the limited nature of a dog sniff. I think Thomas has recognized that that applies to the area immediately outside an apartment. I think Thomas did not suggest that there was any privacy interest in the hallway itself. It was in the ability of the dog to detect. I'm not really relying on Thomas. I'm just talking about the realities of a situation where because we've been talking about expectations of privacy and you cited the lease agreement as allowing entry by the owner in different circumstances. We talked about the number of units and the people walking in front. But I believe that it would be possible to design a facility and have a different kind of lease agreement where the lessor or lessee would have a quite high expectation of privacy. And I'm wondering whether that might alter your arguments. Well, Your Honor, I think, again, given the nature of a dog sniff, I think it would not. I think given that this is, you know, what Thomas and I know you're not relying on Thomas, but the Thomas decision was really a product of a kind of a combination of the property rights and privacy line of cases. And a storage unit, as long as it's not connected to a home, if it's a commercial facility. I don't know why you resist this. Why don't you just, it seems to me that's just not this case. True. This case is people going back and forth. And I'd like to see those. I'm interested in Judge Cardi's storage units. I bet they're very expensive. Very expensive. Because there will be 296 of them, I guarantee you that. But the reality is, is that we measure either the property interest and or the reasonable expectation of privacy in the specific factual circumstances presented. A storage unit is not a storage unit is a storage unit. I mean, it exists within the context of the factual circumstances of the unit itself. Isn't that the case? Yes, Your Honor. I mean, I was, I was trying to get the question presented, but I, this is, that's not this case. I think that was. I do what I am concerned still about the implications. And I would point out still that such a storage unit would protect papers and effects, which are among the things that the Fourth Amendment identifies. Right? Your Honor, I think, again, a dog sniff doesn't trespass on effects and it doesn't, it doesn't reveal. I think you also, again, have to look at the ordinary rule that applies outside of the specific context in Thomas, which is that a dog sniff does not reveal anything except the presence or absence of contraband. It's not even like Kylo, which had the infrared detection equipment, because that revealed, it could reveal things like when you wake or when you're asleep, whether you're cooking, all these kind of other pieces of information about what's going on inside. And I think that a dog sniff, given that it's, it's kind of sui generis and it's so limited, I think the concerns over privacy are equally limited as the Supreme Court has recognized repeatedly. I see I'm well over my time, unless there's other questions, I'll rest on our brief. Thank you. We'll hear rebuttal. Thank you, Your Honor. I'd like to pick up on Judge Wesley's comment about how no storage unit really is necessarily the same from one facility to the next. And it's a very good point. And, and one of the things that's sorely lacking on this record is, is a suppression hearing. And our brief has spelled out the multiple reasons why a hearing needed to occur here. Mr. McKenzie made the preliminary showing necessary to require a hearing to address these facts and many other facts. And that didn't happen here. So we are disadvantaged somewhat by that fact. We're very much disadvantaged. So that's a concern. Relatedly, Government Counsel notes the applicability of the plain error standard. I just don't understand where that comes from. I mean, these issues were not waived. They were fully and exhaustively presented to the district court, including the nature of the storage facility, the access to it, and a variety of other claims that were made in support of the motion to suppress. So plain error is not the standard by which we should be evaluating this. Another point that I wanted to make is that essentially the government's position here is that law enforcement offers can enter a gated storage facility without permission and conduct a canine sniff of every unit in the facility without violating the Fourth Amendment. Respectfully, Your Honors, I don't think the Second Circuit case law supports that at all. It's such a far-reaching proposition. And to get there, in essence, what the government has done is they've taken the Cabalas decision, which was a dog sniff of the trunk of an automobile, and said, because there the Supreme Court said, well, a dog sniff is a limited intrusion because it only is going to detect contraband. And so it's basically taken that holding. And so because a dog sniff is a limited intrusion, therefore, it really can never be a search. And that is effectively what the government's argument is in this case. And again, the implications are far-reaching, and it's inconsistent with the United States v. Hayes, which is a case that reaffirmed Thomas, a very different set of facts involving a person who threw drugs into the bushes along the border with his neighbor, may even have landed in the neighbor's yard, according to the opinion. But what's so important about that case is that the court noted that a canine sniff at the door of an apartment, even if the only function of the sniff is to reveal illegal narcotics inside that apartment, is nonetheless a search subject to the constraints of the Fourth Amendment. And that's exactly what our position is here with respect to the storage unit, that issue. And I thank you, Your Honors. If there are no further questions, we'll rest on our briefs. Thank you. Thank you both, and we'll take the matter under advisement. Nice Fourth Amendment argument.